County Court, Monroe County, April, 1899. Reported. 27 Misc. 308.

THE PEOPLE ex rel. JOHN LEONARD, Relator, *v.* JOHN B. HAMILTON as County Treasurer of Monroe County.

1. Liquor Tax Law (Laws of 1896, chap. 112, sec. 19)—The evidence of the result of a vote on local option which should be furnished to a county treasurer in order to justify him in refusing to issue a liquor tax certificate.

An original memorandum or declaration of a town clerk as to the result of a town election in regard to local option, merely stating the vote on each of the four propositions submitted to a town meeting, is not "a certified copy of the statement of the result" sufficient, within the meaning of section 19 of chapter 112 of the Laws of 1896, when filed by the clerk with the county treasurer to justify the latter in refusing to grant a liquor tax certificate to a hotel keeper of the town, which had voted at said town meeting against the sale of liquor for the ensuing two years.

The statement which should be filed with the county treasurer is a copy of the formal return of the result of the canvass of the votes, signed by the four justices who presided at the town meeting, a copy of their certificate that "the foregoing statement is correct," and to such copies the town clerk should add his certificate that the papers are true copies of the originals on file in his office.

2. Same—Error of town clerk not allowed to defeat the result of an election as to local option.

The error of the town clerk will not be allowed to defeat the wishes of the people as expressed by the election, and, instead of directing a liquor tax certificate to issue at once, the court will allow five days for the filing by the town clerk with the county treasurer of a proper certified statement of the result of the election.

PROCEEDINGS upon a writ of *certiorari* granted by the county judge of Monroe county to review the action of John B. Hamilton, as county treasurer, in refusing to issue a liquor tax certificate to the relator.

George D. Forsyth, for relator.

P. W. Cullinan, for county treasurer.

SUTHERLAND, J.   The relator is the proprietor of the "Cottage Hotel" in the village of Spencerport, town of Ogden, and holds a liquor tax certificate expiring April 30, 1899, which authorizes him to sell liquor as a hotelkeeper in said town.   On March 24th he made an application in due form to the county treasurer for a new certificate to enable him to continue to sell during the year commencing May 1st.   With his application he tendered a bond executed in proper form for approval and offered to pay the amount of the tax, but the treasurer declined to issue the certificate upon the ground that March 14, 1899, the town clerk of said town filed with him a paper of which the following is a copy:
"County of Monroe.— Statement of the vote of the town of Ogden on questions submitted on local option at the annual town meeting held in said town March 7, 1899:

"Question No. 1: number voting Yes, 250; No, 328.
"Question No. 2: number voting Yes, 218; No, 314.
"Question No. 3: number voting Yes, 351; No, 185.
"Question No. 4: number voting Yes, 260; No, 305.

"F. H. DEWEY,<br>"<em>Town Clerk.</em>"

In response to the writ, the treasurer answers that said instrument was considered by him as due official information that the electors of the town of Ogden had determined by a vote taken at their town meeting under the local option provisions of the Liquor Tax Law that no liquors should be sold in that town during the next two years (except by a pharmacist and upon a physician's prescription), and that accordingly he could not lawfully issue the certificate applied for by the relator.

The relator now attacks the document filed by the town clerk as not authoritative, and as insufficient upon its face to warrant the refusal of his application, and counsel agree that the legal

sufficiency of the clerk's statement is the only question to be determined by me in this proceeding.

Under the Liquor Tax Law of 1896, local excise boards are abolished, and the people of the towns are permitted, for the first time since 1847, to vote directly upon the question of sale or no sale in their respective localities. The county treasurer has no discretion to exercise in granting or refusing liquor tax certificates. He acts ministerially and is governed by the face of the papers filed with him. People ex rel. Belden Club v. Hilliard, 28 App. Div. 140. In towns where the sale of liquor is lawful, the right of any duly qualified applicant to enter upon or continue the business remains until, under the local option clause, the right is lost by vote of the people. There is no presumption that such a vote will be taken at the biennial town meeting. In order to have a vote, some one must take the initiative, and the conditions precedent must be complied with, and accordingly section 19 of the Liquor Tax Law provides that when a proper application statement is made with the requisite consents, and a sufficient bond furnished, " the county treasurer  *  *  *  shall at once prepare and issue to the  *  *  *  person making such application and filing such bond and paying such tax, a liquor tax certificate in the form provided for in this act, *unless it shall appear by a certified copy of the statement of the result of an election held on the question of local option, pursuant to section sixteen of this act,* in and for the town where the applicant proposes to traffic in liquors under the certificate applied for, that such liquor tax certificate can not be lawfully granted, in which case the application shall be refused."

Under section 16, which regulates the procedure for voting upon local option, provision is made for submitting to the people four distinct questions, and the section provides that *"A certified copy of the statement of the result of the vote,* upon each of such questions submitted, shall, immediately after such submission thereof be filed by the town clerk or other officer with whom returns of town meetings are required to be filed by the election law, with the county treasurer of the county." The word " certified " was inserted in section 16 before " copy " by the amendment of 1897.

Now, the document filed by the town clerk with the treasurer, March 14th, is not the " certified copy of the statement of the result of the vote" which the clerk is required to file by section 16, and with which, under section 19, the treasurer must be fur-

nished in order to refuse an applicant his certificate. The use of the definite article "the" before the words "statement of the result of the vote" gives to those words precise and definite application. The words undoubtedly refer to that formal return of the result of the canvass of the votes, which, under sections 83, 84 and 111 of the General Election Law, must be made and signed by the inspectors of election. This formal document is styled throughout the Election Law as "The Original Official Statement of the Result" and "The Original Statement of the Canvass." By section 110 it is made a felony for any election officer to sign "any original statement of canvass" at any place other than the polling place. Very careful provisions are made for the preservation of the ballots marked for identification and of ballots rejected as void, which are to be secured in sealed packages and filed "with the original statement of the canvass"; and section 111 of the Election Law further provides: "If ballots are voted on any constitutional amendment, proposition or question, a similar return of the ballots and votes cast thereon shall be made and included as a part of such original statement. * * * At the end of each return contained in such original statement of the canvass, and also at the bottom of each sheet, or half-sheet thereof, the inspectors shall make and sign a certificate that the foregoing statement is correct."

That these general provisions of the Election Law apply to town meetings can not be doubted. In the original enactment of the Election Law, chapter 680, Laws of 1892, section 117, there was a direction that in town elections held at a different time from a general election, a certified copy of "the statement of the result of the canvass" should be filed with the town clerk. In the re-enactment of the Election Law, in 1896, section 117 was omitted, its substance being incorporated into other sections. The requirement that a certified copy of the original statement should be filed with the town clerk seems to have been omitted in the revision, possibly because the original statement itself is filed with the town clerk as the proper custodian of the records of the town meeting.

In the town of Ogden the town meeting is not held in separate election districts, and, accordingly, the four justices of the peace of the town preside at the town meeting and discharge the duties of inspectors of election. In the general revision of the statutes adopted by the Legislature in 1827, it was provided that the

justices of the town should preside at town meetings and act as inspectors of election, canvassing the vote (1 R. S. chap. 11, tits. 2, 3), and the town clerk had no voice in judging as to the result; he only recorded the proceedings of the meeting which had to be signed also by the justices presiding. These provisions have remained substantially unchanged to the present day, except where a town holds its town meeting in separate election districts. The four justices were called the canvassers (chap. 289, Laws of 1830), and are so referred to in the present Town Law. § 39. The clerk is not made a member of the canvassing board. The statement of the result of the canvass, under the Election Law, must be signed by the four justices, they certifying at the end that "the foregoing statement is correct," and then the statement is filed with the town clerk as a permanent record. The town clerk should have copied this original return of the canvass of the votes upon the four propositions submitted, copying also the certificate as to the correctness of the statement, and the signatures of the justices thereto, and to this copy the clerk should have added his own certificate to the effect that it was a true copy of the original statement on file in his office, and filed this certified copy with the county treasurer.

I do not think it can be fairly said that the paper actually filed with the treasurer by the town clerk is a substantial compliance with the statute. It is, upon- its face, an original memorandum or declaration by the clerk upon his own authority as to the result of the election. It does not purport to be a copy of any original official record. It would not be competent as evidence, in its present form, in any judicial proceedings. The proper statement of the result acquires authenticity from the certificate of the justices of the peace, who are the exclusive judges of the election. Their determination, evidenced by their certificate and signatures, is of higher value as evidence than the independent written assertion of the town clerk, and of this higher form of proof, authenticated in due form, the Legislature says the treasurer must be possessed, in order to warrant him in refusing an applicant for a certificate.

My duty in the premises is marked out by section 28, subdivision 1: "If such judge or justice shall upon the hearing determine that such application for a liquor tax certificate * * * has been denied by such officer without good and valid reasons therefor, and that under the provisions of this act such liquor tax

certificate should be issued or transferred, such judge or justice may make an order commanding such officer to grant such application." As the case now stands, under the strict terms of the statute, a peremptory order might be made directing the immediate issuance by the treasurer to this relator of a liquor tax certificate; but, if the question of the sale or no sale has been rightfully submitted to the electors of the town of Ogden and a majority of the people have declared their will to be that no intoxicants shall be sold as a beverage in their town during the next two years, and the result of that vote has been properly ascertained, and a due certification thereof filed with the town clerk, it still remains the duty of that officer to file with the county treasurer " a certified copy of the statement of the result of the vote." And I believe it to be my plain duty not to make an order for an immediate issuance of a certificate to the relator, but to postpone the date for the issuance of the certificate for a sufficient length of time for the town clerk to correct any error in the form of the paper filed by him, in order that the will of the people may be respected and the rights of the electors upheld. It is a sound and wholesome principle often enunciated that where an election is regularly and lawfully held, the courts will not, by a narrow and technical construction of the election laws, permit the election itself to be defeated by the mistake or omission of a clerk or other minis- terial officer in a matter of detail, which does not mislead the public nor affect the result. People ex rel. Hirsh v. Wood, 148 N. Y. 146.

The validity and regularity of the election itself is not before me for review. If a vote was properly taken under the local option clause, then the subsequent. mistake of the town clerk, which, in this instance appears to have been innocently made, should not occasion a peremptory and unconditional order with- out an opportunity to have the clerical error rectified. To hold otherwise would be to subordinate substance to form and place the servant above his master. These statutes are calculated to ascertain and give effect to the popular will, not to thwart it.

In his petition for this writ the relator asserts that because of certain irregularities in the preliminary procedure, the election itself on the local option matter was illegal and void. It is con- ceded that I have no jurisdiction in this proceeding to pass upon that question, but counsel for the relator state their intention to

attack the legality of the vote in any proceeding that may hereafter arise wherein that question can be judicially determined, and it was suggested upon the argument that if an order were made by me, directing the treasurer to issue immediately to the relator a liquor tax certificate, a correctly attested and certified copy of the statement of the result of the vote might then be filed by the town clerk with the county treasurer, and a proceeding taken by any one interested under subdivision 2 of section 28 for the revocation of the certificate issued pursuant to my order, in which second proceeding the legality of the election itself might be tested. This, however, might cast the burden of instituting a contest upon innocent parties. If an election has been fairly and regularly had, the people of the town of Ogden should not be compelled to take the initiative to protect their rights, and the burden should be assumed by him who asserts the invalidity of the vote. I cannot assume, for the purposes of deciding this case, that the election was invalid.

The order to be entered may provide that the county treasurer shall issue a liquor tax certificate to the relator, pursuant to the application made by him on the payment of the tax, unless, within five days, the town clerk of the town of Ogden shall file with the county treasurer a certified copy of the statement of the result of an election held on the question of local option, at the March town meeting, from which it shall appear that such liquor tax certificate cannot be lawfully granted, in which case the application shall be refused. This order works no injustice to the relator. If a legal election has not been held the learned counsel who are protecting the rights of the relator will doubtless find means to prevent the filing of a certificate of an illegal election, or will advise some other method by which full redress can be accorded to the relator for any wrong suffered by him. No costs are allowed in this proceeding.

Ordered accordingly.